This is an arbitration case. Linda Owens, the plaintiff in an action pending in the Etowah Circuit Court, appeals the trial court's order granting the motion filed by Coosa Valley Health Care, Inc. ("Coosa Valley"), to compel Owens to arbitrate her claims against Coosa Valley; the order also stayed discovery of Elma Tucker's medical records. We affirm.
 I. Facts
Elma Tucker was admitted to the Coosa Valley Health Care Nursing Home ("the nursing home"), which is owned and operated by Coosa Valley, following her two-week hospitalization for heart failure. She was to undergo 21 days of rehabilitation at the nursing home. Tucker signed no admission papers; rather, Tucker's admission to the nursing home was handled by her daughter, Linda Owens, who signed the relevant admission documents as Tucker's guardian and sponsor. One of those documents was the following arbitration agreement:
"ALTERNATIVE DISPUTE RESOLUTION AGREEMENT
 "THIS ALTERNATIVE DISPUTE RESOLUTION AGREEMENT is entered into by and between Coosa Valley Health Care, Inc. (`Nursing Home') and the undersigned Patient, Guardian and Sponsor (hereinafter known as `Patient') this the 19th day of March 2002. The meaning of `Nursing Home' for the purposes of this Agreement shall include, without limitation, Nursing Home's assignees, and Nursing Home's and assignees' respective agents, employees, officers, directors, shareholders, direct and indirect parent, subsidiaries, affiliates, predecessors and successors. The meaning of `Patient' shall include Patient and his, her or their sponsors, guardians, heirs, executors, successors, and assigns.
 "In consideration of the foregoing, and as an inducement to Nursing Home to enter into Agreements with the Patient, the parties hereto agree as follows:
 "(1) ALL DISPUTES, CONTROVERSIES OR CLAIMS OF ANY KIND AND NATURE BETWEEN NURSING HOME AND PATIENT ARISING OUT OF OR IN CONNECTION WITH ANY AGREEMENT TO PROVIDE PATIENT WITH MEDICAL CARE, NURSING CARE, PERSONAL CARE, ROOM, BOARD, LAUNDERED LINENS, BED CLOTHING, MEDICATION OR ANY OTHER GOODS AND SERVICES, OR THE BREACH THEREOF, OR ARISING OUT OF ANY PRIOR DEALINGS BETWEEN NURSING HOME AND PATIENT, OR ARISING *Page 985 
OUT OF ANY FUTURE DEALINGS BETWEEN NURSING HOME AND PATIENT, SHALL BE SUBMITTED TO ARBITRATION PURSUANT TO THE PROCEDURES SET OUT HEREIN. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, IT IS THE INTENTION OF THE PATIENT AND NURSING HOME TO RESOLVE BY BINDING ARBITRATION, ALL DISPUTES BETWEEN THEM CONCERNING ALL DISPUTES, CONTROVERSIES OR CLAIMS OF ANY KIND OR NATURE ARISING OUT OF OR IN CONNECTION WITH ANY AGREEMENT TO PROVIDE PATIENT WITH MEDICAL CARE, NURSING CARE, PERSONAL CARE, ROOM, BOARD, LAUNDERED LINENS, BED CLOTHING, MEDICATION OR ANY OTHER GOODS AND SERVICES, OR THE BREACH THEREOF, OR ARISING OUT OF ANY PRIOR DEALINGS BETWEEN NURSING HOME AND PATIENT, OR ARISING OUT OF ANY FUTURE DEALINGS BETWEEN NURSING HOME AND PATIENT.
 "(2) ALL DISPUTES, CONTROVERSIES OR CLAIMS OF ANY KIND AND NATURE ARISING OUT OF OR RELATING TO ANY AGREEMENT TO PROVIDE PATIENT WITH MEDICAL CARE, NURSING CARE, PERSONAL CARE, ROOM, BOARD, LAUNDERED LINENS, BED CLOTHING, MEDICATION OR ANY OTHER GOODS AND SERVICES, OR THE BREACH THEREOF, OR ARISING OUT OF ANY PRIOR DEALINGS BETWEEN NURSING HOME AND PATIENT, OR ARISING OUT OF ANY FUTURE DEALINGS BETWEEN NURSING HOME AND PATIENT, SHALL BE SETTLED BY ARBITRATION IN THE STATE OF ALABAMA IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE `ARBITRATION RULES OF THE AAA'), AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.
 "(3) Nursing Home and Patient acknowledge and agree that providing to patient medical care, nursing care, personal care, room, board, laundered linens, bed clothing, medication or any other goods and services involves `commerce' as defined in the United States Arbitration Act, Title 9, United States Code, `Arbitration,' hereinafter referred to as the `USAA.'
 "(4) EXCEPT AS LIMITED HEREINABOVE, NURSING HOME AND PATIENT UNDERSTAND AND AGREE (I) THAT EACH OF THEM IS WAIVING RIGHTS TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO A JURY TRIAL; (II) THAT PRE-ARBITRATION DISCOVERY IN ARBITRATION PROCEEDINGS IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS; (III) THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING; AND (IV) EITHER PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED. THE VENUE FOR ARBITRATION SHALL BE IN ETOWAH COUNTY, ALABAMA.
 "IN WITNESS WHEREOF, the Nursing Home and Patient have agreed *Page 986 
to be bound by all of the terms and provisions of this Agreement.
 "COOSA VALLEY HEALTH CARE, INC. "By: /s/ Sherry Sims
"/s/ Elma Tucker[1]
"PATIENT
 "By: /s/ Linda Owens
"GUARDIAN/SPONSOR "_________________________ "GUARDIAN
 "/s/ Linda Owens
"SPONSOR"
(Capitalization in original.) Owens claims that there was no discussion of arbitration while she was signing the various documents necessary for Tucker's admission to the nursing home; Coosa Valley claims that the parties discussed arbitration at that time.
Elma Tucker subsequently sued Coosa Valley, alleging that Coosa Valley negligently and wantonly failed to provide adequate care at the nursing home. Following Tucker's death, Owens, as administrator of Tucker's estate, was substituted as the plaintiff.
Coosa Valley filed a motion to dismiss or, in the alternative, to stay the proceedings and compel arbitration. Owens filed a response in opposition to arbitration. Following a hearing, the trial court granted Coosa Valley's motion to compel arbitration. This appeal followed.
II. Standard of Review
 "We review de novo a trial court's ruling on a motion to compel arbitration. Green Tree Fin. Corp. v. Vintson, 753 So.2d 497, 502 (Ala. 1999). Initially, the party seeking to compel arbitration must prove 1) the existence of a contract calling for arbitration, and 2) that the contract `is "a contract evidencing a transaction involving commerce" within the meaning of the Federal Arbitration Act (FAA).' Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 53, 123 S.Ct. 2037, 2038, 156 L.Ed.2d 46 (2003) (quoting 9 U.S.C. § 2). `[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995)."
Hudson v. Outlet Rental Car Sales, Inc., 876 So.2d 455, 457
(Ala. 2003) (emphasis omitted).
 III. Analysis
Owens argues that the trial court erred in granting Coosa Valley's motion to compel arbitration for several reasons. She claims (1) that Elma Tucker did not sign the arbitration agreement and therefore should not be bound by it; (2) that Coosa Valley failed to demonstrate that the underlying transaction involved interstate commerce so as to invoke the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"); (3) that the arbitration agreement is unconscionable; (4) that the arbitration agreement is not broad enough to cover her claims against Coosa Valley; and (5) that 42 U.S.C. § 1396r(c)(5)(A)(iii) prohibits the nursing home from requiring admittees such as Tucker to sign an arbitration agreement. Owens also claims that the trial court erred in staying discovery of Tucker's medical records. *Page 987 
 A.
Owens's first argument is that Tucker should not be bound to the arbitration agreement because Tucker did not sign the agreement. In essence, Owens is arguing that Coosa Valley has not met its initial burden of proving "the existence of a contract [between Tucker and Coosa Valley] calling for arbitration."Hudson, 876 So.2d at 457. This argument is without merit.
As noted above, it is undisputed that Owens, on behalf of Tucker, entered into the arbitration agreement with Coosa Valley.[2] The agreement explicitly states that it is "between Coosa Valley Health Care, Inc. . . . and the undersigned Patient, Guardian and Sponsor (hereinafter known as `Patient')." Tucker is clearly designated on the signature page as the "Patient"; Owens is clearly designated on the signature page as both "Guardian" and "Sponsor"; and the agreement states that "[t]he meaning of `Patient' shall include Patient and his, her or their sponsors, guardians, heirs, executors, successors, and assigns." There is no evidence indicating that Tucker had any objection to Owens's acting on her behalf in admitting Tucker to the nursing home. Coosa Valley has met its burden of proving the existence of a contract between Coosa Valley and Tucker calling for arbitration.
 B.
Owens's second argument is that Coosa Valley failed to demonstrate that the underlying transaction involved interstate commerce so as to invoke the FAA. Under Alabama law, predispute agreements to arbitrate claims are unenforceable. Ala. Code 1975, § 8-1-41(3). However, the FAA preempts this prohibition with regard to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. As stated above, Coosa Valley has met its initial burden of proving "the existence of a contract calling for arbitration." Hudson, 876 So.2d at 457. Coosa Valley must also meet its burden of proving that "the contract `is "a contract evidencing a transaction involving commerce" within the meaning of the Federal Arbitration Act (FAA).'"Hudson, 876 So.2d at 457 (quoting Citizens Bank v. Alafabco,Inc., 539 U.S. 52, 53, 123 S.Ct. 2037, 2038, 156 L.Ed.2d 46
(2003)). We hold that Coosa Valley has clearly met this burden.
In support of its motion to compel arbitration, Coosa Valley submitted the testimony of Ted Cook, the major stockholder and incorporator of Coosa Valley; Cook's testimony indicated (1) that approximately 90% of the medical supplies were purchased for use at the nursing home from an out-of-state supplier; (2) that "nursing-home equipment" and all linens provided to patients at the nursing home were purchased directly from out-of-state suppliers in Missouri, New York, and Wisconsin; (3) that all of the medical forms used by the nursing home were purchased in Iowa and that maintenance on the "nursing home equipment" was performed by a company from California; (4) that supplies were ordered from out of state by mail, telephone, and facsimile transmissions and were shipped to Coosa Valley over various state lines; (5) that several of the patients at the nursing home are from other states; (6) that the nursing home was almost completely controlled by federal regulations and that 95% of the income received by Coosa Valley for providing nursing-home services is in federally *Page 988 
funded Medicaid (80%) or Medicare[3] (15%); (7) that the supplies and equipment procured from out of state were made available to Tucker pursuant to her admission agreement; and (8) that without these out-of-state supplies and equipment and federal funds, the nursing home could not have provided nursing-home services to Tucker. These undisputed facts demonstrate that the underlying transaction in this case — Coosa Valley's providing nursing-home care to Tucker — involves interstate commerce under the FAA. See McGuffey Health Rehab.Ctr. v. Gibson, 864 So.2d 1061 (Ala. 2003) (holding in a similar context that a contract for nursing-home services involved interstate commerce under the FAA even under the now abrogated but much more stringent standard set forth in Sisters of theVisitation v. Cochran Plastering Co., 775 So.2d 759 (Ala. 2000)). Furthermore, if there were any doubt as to whether providing nursing-home services to Tucker involved interstate commerce, that doubt would be put to rest by the fact that the transaction is unquestionably economic in nature, and therefore the question whether the transaction involves interstate commerce can be analyzed by examining the aggregate effect of such transactions nationwide. Service Corp. Int'l v. Fulmer,883 So.2d 621 (Ala. 2003) (noting that "purely intrastate economic or commercial transactions can be within the reach of Congress if the `"general practice" those transactions represent' has, in the aggregate, a substantial effect on interstate commerce." (quotingCitizens Bank, 539 U.S. at 58, 123 S.Ct. at 2041)). As to proving that the transaction involved interstate commerce, Coosa Valley has met its burden.[4]
 C.
Owens's third argument is that the arbitration agreement is unconscionable because it was "signed by [the] daughter of [an] aged widow who had no knowledge of [the] arbitration agreement when her aged and ill mother was admitted to [the] nursing home after medical treatment." However, Owens's basis for her claim of unconscionability is simply wrong on its face. The fact that she did not explain the arbitration agreement to Tucker, or that Coosa Valley did not independently bypass Owens and explain the arbitration agreement to Tucker — an odd act that Coosa Valley would have been under no duty to perform, see Johnnie's Homes,Inc. v. Holt, 790 So.2d 956, 960 (Ala. 2001) (one who offers a product or a service "is under no duty to disclose, or explain, an arbitration clause to a buyer") — is simply not relevant to whether the arbitration agreement was unconscionable. While the parties disagree as to whether arbitration as a means of resolving disputes between the parties was specifically discussed during the process of admitting Tucker to the nursing home, it is undisputed that the details of the arbitration agreement (a freestanding document) were not in any way hidden from Owens. It is true that Tucker was in poor health when she was admitted to the nursing home. However, Tucker did not handle the admission papers; Owens handled the admission papers on Tucker's behalf, and Owens provides no basis on which to find that the *Page 989 
agreement contained "terms that are grossly favorable to [Coosa Valley]" or that Coosa Valley had "overwhelming bargaining power" — the essential elements of unconscionability as summarized by this Court in American General Finance, Inc. v. Branch,793 So.2d 738, 748 (Ala. 2000).
Instead, Owens essentially asks us to adopt a per se rule that would find unconscionable any arbitration agreement involving a nursing home and an elderly patient in poor health; this we cannot do. Owens has not met her burden of proving that the arbitration agreement is unconscionable. Ex parte Napier,723 So.2d 49, 53 (Ala. 1998) (stating that "[u]nder general principles of law, the party asserting the defense of unconscionability has the burden of proving unconscionability").
 D.
Owens's fourth argument is that the arbitration agreement is not broad enough to cover her claims against Coosa Valley. This argument clearly fails, because the arbitration agreement covers "[a]ll disputes, controversies or claims of any kind and nature
between Nursing Home and Patient arising out of or in connection with any agreement to provide Patient with medical care, nursing care, personal care, room, board, laundered linens, bed clothing, medication or any other goods and services, or the breach thereof. . . ." (Emphasis added.) The agreement is broad enough to cover Owens's claims.
 E.
Owens's fifth argument is that 42 U.S.C. § 1396r(c)(5)(A)(iii) prohibits the nursing home from requiring admittees whose fees are paid by Medicare or Medicaid to sign an arbitration agreement. That statute provides:
"(5) Admissions policy
"(A) Admission
 "With respect to admissions practices, a nursing facility must —
". . . .
 "(iii) in the case of an individual who is entitled to medical assistance for nursing facility services [such as Medicare or Medicaid], not charge, solicit, accept, or receive, in addition to any amount otherwise required to be paid under the State plan under this subchapter, any gift, money, donation, or other consideration as a precondition of admitting . . . the individual to the facility or as a requirement for the individual's continued stay in the facility."
Owens's argument fails for at least two reasons.
First, Owens admits that there is no evidence indicating that any of Tucker's fees for nursing-home care were paid through Medicare or Medicaid. If none of Tucker's fees were paid by Medicare or Medicaid, the statute would not apply to Tucker. Second, requiring a nursing-home admittee to sign an arbitration agreement is not charging an additional fee or other consideration as a requirement to admittance. Rather, an arbitration agreement sets a forum for future disputes; both
parties are bound to it and both receive whatever benefits and detriments accompany the arbitral forum. If we were to agree with Owens, virtually any contract term Owens decided she did not like could be construed as requiring "other consideration" in order to gain admittance to the nursing home and thus be disallowed by the statute. Owens's argument based on42 U.S.C. § 1396r(c)(5)(A)(iii) is without merit.
 F.
Owens also claims that the trial court erred in staying discovery, including discovery *Page 990 
of Tucker's medical records from the nursing home, pending the resolution of the arbitration proceedings. Owens cites a federal regulation, 42 C.F.R. § 483.10(b)(2)(i), which provides that a resident of a health-care facility such as the nursing home has the right, "[u]pon an oral or written request, to access all records pertaining to himself or herself including current clinical records within 24 hours."
However, notwithstanding this regulation, the trial court's decision to stay discovery was clearly not erroneous, because when a trial court compels arbitration, that court is required by federal statute to stay all proceedings, see 9 U.S.C. § 3, including discovery (with an exception not relevant here)[5] as to any claims that fall within the scope of an arbitration clause. Quality Truck Auto Sales, Inc. v.Yassine, 730 So.2d 1164, 1170 (Ala. 1999) ("Thus, because we hold that all of Yassine's claims against Quality fall within the compass of the arbitration clause, the trial court must stay discovery with respect to those claims."). Owens can certainly seek to use the conduit of 42 C.F.R. § 483.10(b)(2)(i) during the arbitration proceedings.
Because we hold that Owens's claims are due to be arbitrated, we also hold that the trial court did not err in staying discovery of Tucker's medical records.
 IV. Conclusion
For the reasons stated above, we affirm the trial court's order compelling Owens to arbitrate her claims against Coosa Valley and staying discovery.
AFFIRMED.
SEE, HARWOOD, and WOODALL, JJ., concur.
JOHNSTONE, J., concurs in the rationale in part and concurs in the judgment.
[1] Although the name "Elma Tucker" is handwritten on the line indicating "Patient," it is apparently undisputed that Elma Tucker did not sign her name to the arbitration agreement.
[2] As Coosa Valley points out (without dispute), the practice of having a guardian sign documents for the patient is common in nursing-home admissions. See McGuffey Health Rehab. Ctr. v.Gibson, 864 So.2d 1061, 1061-62 (Ala. 2003).
[3] However, Owens pointed out that there is no evidence indicating that Tucker received funds from Medicaid or Medicare to assist her in paying for her nursing-home care.
[4] With regard to the interstate-commerce issue, Owens argues that the trial court erred in admitting the affidavit of Mark Cook, the administrator of the nursing home. However, our decision with regard to the interstate-commerce issue does not rely on Cook's testimony; therefore, we need not address that argument.
[5] See Ex parte Horton Family Housing, Inc., 882 So.2d 838,841 (Ala. 2003) ("Though rare in a proceeding on a motion to compel arbitration, discovery is allowed in certain circumstances. We have fashioned an exception where substantial evidence to defeat the motion may exist, but the opposing party is `unable or virtually unable to obtain the necessary evidence except through discovery.'" (quoting Ex parte Greenstreet,806 So.2d 1203, 1208 (Ala. 2001))); see also Ex parte Jim BurkeAuto., Inc., 776 So.2d 118, 121-22 (Ala. 2000).