DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Dovie Broughsville has appealed the decision of the Lorain County Court of Common Pleas granting the application of Defendant-Appellee OHECC, L.L.C., dba Ohio Extended Care Center ("OHECC") to stay trial pending results of arbitration. This Court affirms.
 I {¶ 2} On September 9, 2004, Appellant filed a complaint for negligence in the Lorain County Court of Common Pleas, alleging that Appellant sustained serious personal injury while in the exclusive care of OHECC, a nursing home/long term care facility located in Lorain, Ohio. The alleged injury occurred on September 11, 2003 while Appellant was a respite care resident of OHECC. OHECC answered Appellant's complaint on October 26, 2004. That same day, OHECC filed an application to stay trial pending results of arbitration pursuant to an arbitration provision found in the facility's admission agreement (the "Agreement").
 {¶ 3} On November 15, 2004, Appellant filed a brief in opposition to OHECC's application to stay trial pending results of arbitration. The brief argued that the arbitration provision contained in the Agreement was unenforceable and that the trial court must deny OHECC's application. On December 6, 2004, OHECC filed a reply to Appellant's brief in opposition to the application to stay trial pending results of arbitration. In its March 1, 2005 journal entry, the Lorain County Court of Common Pleas found the arbitration provision not to be unconscionable and granted OHECC's application to stay trial pending results of arbitration.
 {¶ 4} Appellant timely appealed, asserting one assignment of error.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED IN GRANTING APPELLEE'S APPLICATION TO STAY TRIAL PENDING RESULTS OF ARBITRATION."
 {¶ 5} In her sole assignment of error, Appellant has argued that the Lorain County Court of Common Pleas' decision to grant OHECC's application to stay trial pending results of arbitration was in error. Specifically, Appellant has argued that the arbitration provision in the Agreement is unconscionable, that Appellant is not a signatory to the Agreement, that the arbitration provision is unenforceable because the designated arbital forum is unavailable, and that federal regulations preclude inclusion of arbitration provisions in admission agreements. We disagree with Appellant's contentions.
Apparent Authority
 {¶ 6} The first issue we must review is whether Appellant's daughter, Odarise McCall Wheeler ("Wheeler"), had the authority to bind Appellant to arbitration, effectively waiving her right to a jury trial. Appellant has argued that because Wheeler signed the Agreement, and because Appellant allegedly never gave her authority to sign an arbitration provision, that the arbitration provision is unenforceable as against her. We disagree.
 {¶ 7} In support of her argument that Wheeler did not have the authority to enter into an arbitration provision and waive the right to a jury trial, Appellant has relied solely on Wheeler's affidavit, in which she avers that Appellant "never provided [Wheeler] with the authority to agree to submit any claim for injury to arbitration and to waive the right to a jury trial." Even setting aside the arguably self-serving nature of this statement, the question is not whether Wheeler had actual
authority to bind Appellant to arbitration, but whether she had apparent authority to do so.
 {¶ 8} This Court has stated that:
"The authority for one party to bind another can arise in several ways. The Ohio Supreme Court has held that: `Even where one assuming to act as agent for a party in the making of a contract has no actual authority to so act, such party will be bound by the contract if such party has by his words or conduct, reasonably interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract.'" Standen v. Smith (Feb. 20, 2002), 9th Dist. No. 01CA007886, at 8-9, quoting Miller v. WickBldg. Co. (1950), 154 Ohio St. 93, paragraph two of the syllabus.
 {¶ 9} The present case is a classic example of apparent authority. Wheeler, by signing the Agreement on behalf of her mother, acted in such a way that a reasonable person could believe that that she had the necessary authority to make the contract. Regardless of actual authority, circumstances were such at the time of the signing that Wheeler's conduct could be interpreted as authority to enter into an agreement on Appellant's behalf.
 {¶ 10} To demonstrate apparent agency, the facts must establish "(1) That the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority." (Quotations omitted) Yusko v. Subichin, 9th Dist. No. 21490, 2003-Ohio-7194, at ¶ 17. When determining the apparent power of an agent, we must scrutinize the conduct of the principal, not the actions of the agent. Id.
 {¶ 11} In the instant matter, we think it clear that while Appellant may not have held Wheeler out to the public as her agent, she knowingly permitted her to act as having such authority by signing Appellant's name to the Agreement. Appellant was present at the signing of the Agreement and made no attempt to stop Wheeler, to ask questions of OHECC or to request to read the document. While it is averred that Appellant suffers from mild dementia, nowhere is it argued that she was incompetent at the time of the signing or was unable to vocalize an objection to Wheeler's actions. In fact, the only reason cited for Wheeler's intervention was that Appellant was suffering from contractures.
 {¶ 12} Furthermore, upon reviewing the record, we find it equally clear that OHECC, acting in good faith, had reason to believe that Wheeler possessed the authority to admit Appellant into the residence and to sign the Agreement. Arguably, OHECC knew of the relationship between Appellant and Wheeler, having provided respite care for them in the past. Additionally, Wheeler, by signing the document in the presence of Appellant and whereas Appellant acquiesced to such conduct, gave OHECC reason to believe that Wheeler acted under Appellant's authority.
 {¶ 13} The cases cited by Appellant to support her argument are inapposite. In Pagarigan v. Libby Care Center, Inc. (2002),99 Cal. App. 4th 298, the resident lacked the mental competence to authorize her daughters to enter in an arbitration agreement at the time of admission. In Phillips v. Crofton Manor Inn (May 15, 2003), Cal.App. 2nd Dist, 2003 WL 21101478, the court held that although the daughter claimed to be father's representative, such a claim by daughter did not authorize her to sign an arbitration agreement on his behalf. Once again, at all times relevant to the case, the resident was incompetent and unable to authorize their representative to enter into an arbitration agreement.[1] In both of these cases, due to incompetence, the residents could not explicitly authorize, hold out, or knowingly permit the agent to act in such a way, in satisfaction of element one of the doctrine of apparent authority.
 {¶ 14} While Appellant allegedly suffers from mild dementia which causes "periods of confusion," Appellant has not argued and nowhere in the record is it indicated that Appellant was incompetent at the time of admission or that she was suffering a period of confusion. To the contrary, Wheeler's affidavit clearly states that contractures, not dementia, was the reason she signed Appellant's name to the Agreement. Contractures is a physical ailment and there is no indication in the record that Appellant was unable to think lucidly, to understand the Agreement, to ask questions or to object to Wheeler's signing her name. Therefore, we find that Wheeler had the apparent authority to sign the Agreement and bind Appellant to the arbitration provision therein.
Unconscionability
 {¶ 15} Having resolved the question of whether Appellant is bound to the Agreement, we must next address the issue of unconscionability. Appellant contends that the arbitration provision in the Agreement is unenforceable as it is procedurally and substantively unconscionable. We disagree.
 {¶ 16} Generally, we review a trial court's disposition of a motion to stay trial pending arbitration under an abuse of discretion standard. Porpora v. Gatliff Bldg. Co., 9th Dist. No. 04CA0051-M, 2005-Ohio-2410, at ¶ 5, citing Reynolds v. LaposConstr., Inc. (May 30, 2001), 9th Dist. No. 01CA007780. However, the unconscionability of a contract and its provisions is purely a question of law. Featherstone v. Merrill Lynch, Pierce, Fenner Smith, Inc., 159 Ohio App.3d 27, 2004-Ohio-5953, at ¶ 12;Eagle v. Fred Martin Motor Co., 157 Ohio App.3d 150,2004-Ohio-829, at ¶ 13. Therefore, we review the trial court's determination of unconscionability de novo. Featherstone at ¶ 12, citing Eagle at ¶ 13. Additionally, "[a] determination of unconscionability is a fact-sensitive question that requires a case-by-case review of the surrounding circumstances."Featherstone at ¶ 12. citing Eagle at ¶ 13.
 {¶ 17} Initially we note that public policy in Ohio favors arbitration as a means to settle disputes. Schaefer v. AllstateIns. Co. (1992), 63 Ohio St.3d 708, 711-712; Porpora at ¶ 6;Eagle at ¶ 14. Accordingly, arbitration provisions are generally valid and enforceable pursuant to R.C. 2711.01(A). In fact, when examining an arbitration clause, a court must "bear in mind the strong presumption in favor of arbitrability and resolve all doubts in favor of arbitrability." Neubrander v. Dean WitterReynolds, Inc. (1992), 81 Ohio App.3d 308, 311. However, an arbitration provision may be held unenforceable under the statute on "grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A). One of those grounds is unconscionability. Porpora at ¶ 6; Eagle at ¶ 29. A party seeking to invalidate an arbitration clause on grounds of unconscionability must establish that the provision is both procedurally and substantively unconscionable. Porpora at ¶ 6;Eagle at ¶ 30, citing Collins v. Click Camera Video, Inc.
(1993), 86 Ohio App.3d 826, 834.
 {¶ 18} Procedural unconscionability concerns the "formation of the agreement and occurs when no voluntary meeting of the minds is possible." Porpora at ¶ 7, citing Bushman v. MFCDrilling (July 19, 1995), 9th Dist. No. 2403-M. This Court has held that when determining procedural unconscionability, a reviewing court must consider factors bearing directly to the relative bargaining position of the parties. Porpora at ¶ 7;Featherstone at ¶ 13; Eagle at ¶ 31. Such factors include "`age, education, intelligence, business acumen, experience in similar transactions, whether terms were explained to the weaker party, and who drafted the contract.'" Featherstone at ¶ 13, quoting Eagle at ¶ 31. Substantive unconscionability goes to the terms of contract themselves. See Porpora at ¶ 8; Eagle
at ¶ 31. Contractual terms are substantively unconscionable if they are unfair and commercially unreasonable. Porpora at ¶ 8, citing Bank One, N.A. v. Borovitz, 9th Dist. No. 21042, 2002-Ohio-5544, at ¶ 16.
 {¶ 19} Having reviewed the applicable law, we turn our attention to the arbitration provision at issue and the circumstances surrounding Appellant's signing of it.
Procedural Unconscionability
 {¶ 20} Appellant has argued that the arbitration provision included in the Agreement is procedurally unconscionable and thereby unenforceable. In reviewing the surrounding circumstances, we find that no procedural unconscionability existed at the time Appellant entered into the arbitration provision. While it is evident that Appellant was not on equal footing with OHECC in terms of bargaining power, mere inequality of bargaining power is not a sufficient reason to hold an arbitration provision unenforceable. Neubrander,81 Ohio App.3d at 311.
 {¶ 21} In the instant case, Appellant was in a sound bargaining position. She was being admitted by her daughter voluntarily and of her own free will, for respite care. There was no apparent emergency or need for an expeditious admission. The record does not indicate there was any pressure exerted on Appellant, nor was haste imposed in reviewing and signing the Agreement. Furthermore, while Appellant was 85 years old at the time of the signing, the record does not indicate that she was suffering from dementia or confusion at the time and nowhere has Appellant averred that she was incompetent. Wheeler, who presumably read and signed the Agreement on Appellant's behalf, was competent, 54 years old, college educated and a registered nurse.
 {¶ 22} Furthermore, the arbitration provision was written in plain language and is in the same sized font as the rest of the Agreement. While the provision does appear on pages 12 and 13 of the Agreement, it is, contrary to Appellant's assertions, set out with a bold, capitalized heading "Resolution of Disputes." Additionally, the provision is divided into four categories, each with a bold and underlined descriptive title. Paragraph 2 clearly states that any dispute arising between the parties based on an alleged violation of a resident's rights shall be settled by binding arbitration as set forth in Paragraph 4. Appellant has argued that the term "arbitration" was foreign to her, and that may be the case, but nothing in the record indicates that Appellant or Wheeler were discouraged from asking questions concerning the terms of the Agreement or harried in any way.
 {¶ 23} Appellant also contends that the fact that she was not represented by an attorney should necessitate a finding of procedural unconscionability. We disagree. While having an attorney present is a factor to be considered, it is in no way dispositive of the issue. We think it common sense that most people do not hire lawyers to accompany them every time they are required to sign a form contract. Similarly, the fact that Appellant and Wheeler lacked particularized legal training has little bearing on our decision, as a vast majority of the population lack legal training, yet remain bound to contracts that they have signed. The record also reflects that Appellant had been admitted to the facility on a previous occasion and had signed an admissions agreement with an identical arbitration provision. Such experience with similar transactions tends to disfavor a finding of unconscionability.
 {¶ 24} Finally, the arbitration provision clearly states that the resident's agreement to arbitrate disputes is not a condition of admission. Appellant has argued that this clause is purely a pretext — that the Agreement provided no mechanism for rejecting the arbitration provision and therefore, the arbitration clause was presented on a take it or leave it basis. This argument is unpersuasive. An unconscionable contract is "one in which there is an absence of meaningful choice for the contracting parties [.]" Eagle at ¶ 30. Here, Appellant, through her agent, did not lack the opportunity to choose. As discussed supra, there was no emergency and Appellant could have chosen to forego signing the Agreement and found respite care with another facility. Furthermore, Appellant could have asserted her power as a paying customer and demanded removal of the arbitration provision in exchange for her business. Instead, she chose to sign the Agreement, not once, but on two separate occasions. Appellant did not lack meaningful choice.
 {¶ 25} Based on the foregoing, we find that the arbitration provision at issue was not procedurally unconscionable.
Substantive Unconscionability
 {¶ 26} In order to establish the unconscionability of a contract, "[o]ne must allege and prove a quantum of both prongs" of the two prong test. See Eagle at ¶ 30, quoting Collins,86 Ohio App.3d at 834. As Appellant has failed to show the existence of procedural unconscionability, this Court declines to address the issue of substantive unconscionability.
Designated Arbital Forum is Unavailable
 {¶ 27} Appellant has argued that the arbitration provision is unenforceable because the arbitrator designated by the provision will no longer accept her liability claim. The arbitration provision states that any arbitration will be conducted in accordance with the American Health Laywer's Association ("AHLA") Alternative Dispute Resolution Service ("ADR Service") Rules of Procedure for Arbitration. Contrary to OHECC's assertion that the clause only requires the use of AHLA rules of procedure, the language of the clause clearly designates AHLA as the entity to administer the claim.[2]
 {¶ 28} However, pursuant to AHLA Rules of Procedure for Arbitration, on or after January 1, 2004, the ADR Service will only administer a consumer health care liability claim if all parties have agreed in writing to arbitrate the claim after the injury has occurred. In the instant case, Appellant has argued, the alleged agreement to arbitrate was entered into prior to the injury and therefore by AHLA rule, the claim will not be administered. Appellant further contends that as the Agreement does not provide an alternate mechanism for arbitration, the provision necessarily must be unenforceable. OHECC has argued that the Agreement's savings clause allows for severability of any unconscionable or illegal contract terms without invalidating the whole.
 {¶ 29} The savings clause states in pertinent part:
"The terms of this Agreement are severable. If any term or provision of this Agreement is determined to be illegal or unenforceable by a court of competent jurisdiction, the remaining terms and provisions of this Agreement shall remain in full force and effect."
 {¶ 30} The severability of a contract is dependent upon the intent of the parties. Toledo Police Patrolmen's Assn., Local10, IUPA v. Toledo (1994), 94 Ohio App.3d 734, 740. Whether a contract is severable "`depends generally upon the intention of the parties, and this must be ascertained by the ordinary rules of construction, considering not only the language of the contract, but also, in cases of uncertainty, the subject-matter, the situation of the parties, and circumstances surrounding the transaction, and the construction placed upon the contract by the parties themselves.'" Id., quoting Huntington Finke Co. v.Lake Erie Lumber Supply Co. (1924), 109 Ohio St. 488, paragraph one of the syllabus.
 {¶ 31} In the present case, the intent of the parties is evidenced by the existence of a savings clause. Toledo PolicePatrolmen's Assn. at 741. "Inclusion of such a clause clearly shows the parties intended the contract to be severable." Id. We conclude that the language of the contract clearly indicates intent for the contract to be severable, and furthermore, this not being a "case of uncertainty" we needn't look past the plain meaning of the severability clause.
 {¶ 32} Appellant has argued that a contract is not divisible when its purpose, terms and nature contemplate that its parts and consideration shall be interdependent and common to each other. We conclude that the intent of the parties, as evidenced by a signed arbitration agreement, was to arbitrate disputes — not to specifically have AHLA arbitrate disputes. We do not think this overarching intent is dependent upon using AHLA to administer the arbitration. AHLA exists simply as a tool to achieve the end goal of arbitration. There is no evidence in the record, nor is it argued that OHECC would be unwilling to cooperate with Appellant to find a suitable arbital forum in which her case could be heard. Therefore, we find that the terms listed under subheading 4 "Conduct of Arbitration" are severable from the rest of the Agreement and subsequently, the unavailability of ADR Service does not invalidate the arbitration provision.
Federal Law Prohibits Arbitration Provisions
 {¶ 33} Appellant has argued that federal laws and regulations prohibit the inclusion of arbitration provisions in admission agreements. Specifically, Appellant has argued that nursing home admission contracts containing arbitration provisions constitute unauthorized additional consideration from the resident. Appellant has argued that by requiring a resident to waive a right to a jury trial in order to be admitted, the facility is garnering additional consideration that is impermissible under federal medical assistance programs. See42 U.S.C. § 1396r(c)(5)(A)(iii); 42 C.F.R. § 483.12(d)(3)
 {¶ 34} We begin by reiterating that OHECC in no way required Appellant to waive her right to a jury trial in order to be admitted to the facility. The provision clearly stated that admission was not contingent upon agreement to arbitrate disputes. There is no evidence that OHECC would have denied admission to Appellant had she refused to agree to the arbitration provision. The primary reason for this lack of evidence is that at no time did Appellant refuse to agree to the arbitration provision, nor did she inquire as to the consequences of declining to arbitrate.
 {¶ 35} Furthermore, Appellant has cited no authority supporting her argument that agreeing to arbitration constitutes additional consideration in violation of federal law. We think that such a contention is problematic and we align with other jurisdictions in expressly rejecting the argument. InGainesville Health Care Center, Inc. v. Weston (2003),857 So.2d 278, the First District Court of Appeal of Florida held that "[w]e have found no authority from any jurisdiction which holds that an arbitration provision constitutes `consideration' in this sense; nor do we believe that the federal regulation was intended to apply to such a situation." Id. at 288. The Supreme Court of Alabama has followed a similar tact, holding that:
"[R]equiring a nursing-home admittee to sign an arbitration agreement is not charging an additional fee or other consideration as a requirement to admittance. Rather, an arbitration agreement sets a forum for future disputes; both parties are bound to it and both receive whatever benefits and detriments accompany the arbitral forum. If we were to agree with Owens, virtually any contract term Owens decided she did not like could be construed as requiring `other consideration' in order to gain admittance to the nursing home and thus be disallowed by the statute. Owens's argument based on42 U.S.C. § 1396r(c)(5)(A)(iii) is without merit." Owens v. Coosa ValleyHealth Care, Inc. (2004), 890 So.2d 983, 989.
 {¶ 36} Based on the foregoing, we conclude that the inclusion of an arbitration provision in a nursing home admissions agreement does not constitute additional consideration and therefore is not precluded by 42 U.S.C. § 1396r(c)(5)(A)(iii) nor42 C.F.R. § 483.12(d)(3).
Conclusion
 {¶ 37} In conclusion, we find that Appellant's arguments are unpersuasive. This Court concludes that Wheeler had apparent authority to bind Appellant to the Agreement; the arbitration provision at issue is not unconscionable; the unavailability of the designated arbitrator does not invalidate the arbitration provision; and arbitration provisions incorporated in admissions agreement are not precluded by federal law. Accordingly, Appellant's assignment of error lacks merit.
 III {¶ 38} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Moore, J., concur.
[1] In Phillips, father Charles Phillips suffered from Alzheimer's disease and was a known "wanderer."
[2] Paragraph 4 of the arbitration provision, headed, "Conduct of Arbitration" states that "any person requesting arbitration will be required to pay a filing fee to AHLA[.]" It goes on to state "[t]he issue of whether a party's claims are subject to arbitration under this Agreement shall be decided through the AHLA arbitration process[.]" Additionally, the provision steers requests for information regarding AHLA's Alternative Dispute Resolution Service directly to the AHLA.