OPINION
{¶ 1} In this accelerated calendar case, appellant, Cynthia Manley, appeals the judgment entered by the Lake County Court of Common Pleas. The trial court granted a motion to stay the proceedings pending arbitration filed by appellee, Personacare of Ohio, d.b.a. Lake Med Nursing Home and Rehabilitation Center ("Personacare").
 {¶ 2} On April 8, 2004, appellant's mother, Patricia Manley, went to the emergency room at Lake West Hospital. Patricia Manley was admitted to the hospital and stayed there until April 15, 2004. On that date, she was released from the hospital and went to Lake Med Nursing Home ("Lake Med").
 {¶ 3} Upon her arrival at Lake Med, Patricia Manley met with Kathy Large, the Admissions Director of Lake Med. Patricia Manley signed a document entitled "resident admission agreement." In addition, she signed a document entitled "alternative dispute resolution agreement between resident and facility."
 {¶ 4} According to appellant's complaint, Patricia Manley fell several times after being admitted to Lake Med, she was permitted to become sick, and she eventually died as a result of the treatment she received at Lake Med.
 {¶ 5} Appellant, as the personal representative of Patricia Manley, filed this lawsuit against Personacare, alleging that Personacare was responsible for Patricia Manley's death. In response to the complaint, Personacare, pursuant to R.C. 2711.02, filed a motion to stay the proceedings and have the matter referred to arbitration. Personacare claimed the subject matter of the complaint was subject to an arbitration agreement between itself and Patricia Manley. Appellant filed a brief in opposition to Personacare's motion to stay. Thereafter, Personacare filed a reply memorandum in support of its motion. In addition, Personacare filed Kathy Large's affidavit. Attached to Large's affidavit were several documents, including: (1) a competency evaluation from Dr. Bahman Sharif, dated April 12, 2004, which was provided to Kathy Large prior to the admissions process; (2) a copy of the resident admission agreement; (3) a copy of the alternative dispute resolution agreement between resident and facility; and (4) a copy of a pamphlet regarding alternative dispute resolution.
 {¶ 6} The trial court granted Personacare's motion to stay the proceedings.
 {¶ 7} Appellant has timely appealed the trial court's judgment entry to this court. We note that a judgment granting a motion to stay proceedings pending arbitration is a final, appealable order.[1] Thus, we have jurisdiction to consider this appeal.
 {¶ 8} Manley raises the following assignment of error:
 {¶ 9} "The trial court erred when it granted Defendant Personacare of Ohio, Inc. d.b.a. Lake Med Nursing and Rehabilitation Center's motion to stay proceedings pursuant to O.R.C. 2711.02."
 {¶ 10} Generally, the standard of review of review for a decision regarding a motion to stay the proceedings pending arbitration is abuse of discretion.[2] "The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'"[3] However, "[unconscionability is a question of law."[4] Therefore, we will apply a de novo standard of review to this matter.[5]
 {¶ 11} We note that public policy in Ohio favors the resolution of disputes through arbitration.[6] Further, "[arbitration is encouraged as a method of dispute resolution, and a presumption favoring arbitration arises when the claim in dispute falls within the arbitration provision."[7] However, even with the presumption in favor of arbitration, an arbitration clause may be held unenforceable for several reasons, including that the clause is unconscionable.[8]
 {¶ 12} The fundamental question in this matter is whether the arbitration clause is unconscionable. Regarding unconscionability, this court has held:
 {¶ 13} "Under Ohio law, a contract clause is unconscionable where one party has been misled as to its meaning, where a severe imbalance of bargaining power exists, or where the specific contractual clause is outrageous.'[9] Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party.[10]"[11]
 {¶ 14} There are two prongs that must be met for a successful claim of unconscionability, substantive unconscionability and procedural unconscionability.[12] A substantive unconscionability analysis considers whether the actual terms of the contract are commercially reasonable.[13] "Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible."[14]
 {¶ 15} We will first address whether the arbitration agreement was procedurally unconscionable.
 {¶ 16} There are two recent appellate cases that address the issue of procedure unconscionability as it relates to arbitration clauses in a nursing home setting. In Small v. HCF of Perrysburg, Inc., the Sixth Appellate District found the arbitration clause procedurally unconscionable.[15] In Broughsville v. OHECC, LLC, the Ninth Appellate District found an arbitration provision not to be procedurally unconscionable.[16]
 {¶ 17} There are some factors in this matter that weigh against a finding of procedural unconscionability. Kathy Large stated in her deposition that Patricia Manley was alert, asked questions, and appeared to understand what was happening. Further, Kathy Large stated that she explained the arbitration procedure to Patricia Manley by using a hypothetical situation — if a nurse spilled soup on Patricia Manley, she would not be able to sue Personacare in court.
 {¶ 18} Kathy Large also stated that she provided Patricia Manley with a pamphlet explaining the arbitration agreement. This pamphlet is written without excessive legal terms, and it describes the mediation and arbitration processes and some of the benefits associated with the program.
 {¶ 19} While there are some factors that weigh against a finding of procedural unconscionability, these factors are outweighed by the factors supporting such a finding.
 {¶ 20} In Small v. HCF of Perrysburg, Inc., the Sixth District noted that the agreement was signed under considerable stress. The patient's wife signed the document on his behalf. However, the patient appeared to be unconscious at that time and was in the process of being transferred to a hospital.[17] In Broughsville v. OHECC, LLC, the situation was not nearly as stressful. The patient's daughter signed the agreement on her behalf. There was no "apparent emergency or need for an expeditious admission."[18] Finally, the patient had previously been admitted to that exact nursing home, and signed an identical agreement.[19]
 {¶ 21} In the case sub judice, stress was a factor. Patricia Manley was in a hospital the week prior to her admission. She was transferred directly from the hospital to the nursing home. Unlike the situation inBroughsville v. OHECC, LLC, she did not have a friend or family member with her during the admissions process. Further, Dr. Sharif's report indicates that Patricia Manley was assaulted one week prior to her admission to the hospital. She told Dr. Sharif that she was "quite frightened" due to the assault.
 {¶ 22} We next look to the age of the patient. In this matter, Patricia Manley was 66 years old. The signer in Small v. HCF ofPerrysburg, Inc. was 69 years old.[20] Finally, the patient inBroughsville v. OHECC, LLC was 85 years old; however, her daughter, who actually signed the contract, was 54 years old.[21] In this matter, Patricia Manley's age weighs, albeit minimally, in favor of finding the arbitration agreement procedurally unconscionable.
 {¶ 23} In the instant matter, there was no evidence that Patricia Manley had any legal expertise, however, she was college-educated. The signer in Small v. HCF of Perrysburg, Inc. had no legal expertise.[22]
In Broughsville v. OHECC, LLC, the signer was college-educated and a registered nurse.[23] In all of these instances, the signer of the contract had no formal legal experience.[24] Further, in all three instances, the signer did not have an attorney present. While these factors do not, per se, make the contract procedurally unconscionable, they weigh in that direction.
 {¶ 24} We next look to the evidence that was submitted regarding Patricia Manley's cognitive abilities. Dr. Sharif concluded that Patricia Manley was competent. However, he also determined that she had a "very mild cognitive impairment." As an example, Dr. Sharif noted that she could not remember what month or year she retired, but she knew it was shortly after her husband died. Dr. Sharif also noted that Patricia Manley had two different medical conditions, either of which could cause her confusion. Finally, Dr. Sharif documented numerous medical aliments of Patricia Manley.
 {¶ 25} The evidence before the trial court was that Patricia Manley was competent. However, the relevant issue is not whether Patricia Manley was competent or had the contractual capacity to enter into a contract. The undisputed evidence demonstrates that she did. Rather, the relevant inquiry is her bargaining power in relation to Personacare. The fact that Patricia Manley had numerous physical ailments, bouts of confusion, and a mild cognitive impairment weighs in favor of a conclusion that the arbitration agreement is procedurally unconscionable.
 {¶ 26} In addition, we note the quality of Patricia Manley signatures on the documents she signed during the admissions process, including the arbitration agreement. None of the signatures are entirely on the designated line. Her signature on the arbitration agreement is entirely below the designated line. On other documents, her signatures are significantly above the designated line. The fact that Patricia Manley had extreme difficulty signing her name on the day in question suggests that she did not have the ability to meticulously read the provisions of the contracts presented to her.
 {¶ 27} Finally, we examine the underlying purpose of arbitration agreements. As stated by the Sixth District:
 {¶ 28} "Arbitration clauses were first used in business contracts between sophisticated businesspersons as a means to save time and money should a dispute arise. As evidenced by the plethora of recent cases involving the applicability of arbitration clauses, the clauses are now being used in transactions between large corporations and ordinary consumers, a use that is cause for concern. Particularly problematic in this case, however, is the fact that the clause at issue had potential application in a negligence action. Such cases are typically fact-driven and benefit from the discovery process afforded in a civil action. Further, negligence cases often hinge on the reasonableness of a particular action or inaction. Such a subjective analysis is often best left to a jury acting as the fact finder. Theses observations are not intended to prevent the application of arbitration clauses in tort cases; we merely state that these additional facts should be considered in determining the parties' intentions."[25]
 {¶ 29} The fact that a resident is signing an arbitration agreement contemporaneously with being admitted into a nursing home is troubling. By definition, an individual being admitted into a nursing home has a physical or mental detriment that requires them to need the assistance of a nursing home. Further, the reality is that, for many individuals, their admission to a nursing home is the final step in the road of life. As such, this is an extremely stressful time for elderly persons of diminished health. In most circumstances, it will be difficult to conclude that such an individual has equal bargaining power with a corporation that, through corporate counsel, drafted the form contract at issue.
 {¶ 30} In the case at bar, Patricia Manley was 66 years old, entering a nursing home directly from a hospital, without an attorney, friend, or family member to assist her in the process. She had fears due to a recent assault, had no legal expertise, had numerous physical problems, had a mild cognitive impairment, and had bouts of confusion. In light of these factors, we conclude her bargaining power was substantially outweighed by the relative bargaining power of Personacare.
 {¶ 31} The arbitration agreement is procedurally unconscionable.
 {¶ 32} We will now address whether the arbitration agreement was substantively unconscionable. The Fifth and Sixth Appellate Districts have recently addressed the issue of an arbitration clause being substantively unconscionable in relation to a nursing home contract.[26] In Small v. HCF of Perrysburg, Inc., the Sixth District found the arbitration clause substantively unconscionable.[27]
Similarly, in Fortune v. Castle Nursing Homes, Inc., the Fifth District concluded that an arbitration clause was substantively unconscionable.[28] The Fifth District offered the following characteristics of an arbitration clause that would hypothetical^ pass the substantive unconscionability test:
 {¶ 33} "An example of an arbitration agreement in a medical setting that a court found not to be oppressive or unconscionable had the following features: (1) it was a stand-alone, one-page contract; (2) the contract contained an explanation of its purpose that encouraged the patient to ask questions; (3) the contract contained a ten-point capital-letter red type directly above the signature line that stated, `(E3)y signing this contract you are giving up your right to a jury or court trial'; (4) the contract also provided that it could be revoked by the patient within 30 days."[29]
 {¶ 34} In this matter, the arbitration agreement contained the following warnings, which were printed in bold type:
 {¶ 35} "Understanding of the Resident. By signing this agreement, the Resident is acknowledging that he/she understands the following: (1) he/she has the right to seek legal counsel concerning this Agreement; (2) the execution of this Agreement is not a precondition of admission or to the furnishing of services to the Resident by Facility, and the decision of whether to sign the Agreement is solely a matter for the Resident's determination without any influence; (3) this Agreement may not even be submitted to Resident when Resident's condition prevents him/her from making a rational decision whether to agree; (4) nothing in this Agreement shall prevent Resident or any other person from reporting alleged violations of law to the Facility, or the appropriate administrative, regulatory or law enforcement agency; (5) the ADR process adopted by this Agreement contains provisions for both mediation and binding arbitration, and if the parties are unable to reach settlement informally, or through mediation, the dispute shall proceed to binding arbitration; and (6) agreeing to the ADR process in this agreement means that the parties are waiving their right to a trial in court, including their right to a jury trial, their right to a trial by judge, and their right to appeal the decision of the arbitrator(s) in a court of law."
 {¶ 36} In Small v. HCF of Perrysburg, Inc. and Fortune v. CastleNursing Homes, Inc., the arbitration agreement was included in the admission contract to the nursing home.[30] In this case, the arbitration agreement was a separate, stand-alone document. The fact that the arbitration agreement was not part of the admissions contract is indicative of the fact that signing the arbitration agreement was not contingent upon admission to the nursing home.[31]
 {¶ 37} In this matter, the arbitration agreement contained a specific statement that admission to the nursing home was not contingent upon agreeing to the arbitration agreement. The inclusion of this statement is not, by itself, determinative of the substantive unconscionability issue. In Small v. HCF of Perrysburg, Inc., the Sixth District concluded that the statement did not overcome the underlying fact that admission to the nursing home was contingent upon agreeing to the arbitration clause, due, in part, to the inclusion of the arbitration clause in the admission contract.[32] In the case sub judice, however, the fact that this statement was written in bold type in the arbitration agreement, which was a separate agreement, strongly suggests that admission to the facility was not contingent upon signing the arbitration agreement.
 {¶ 38} The arbitration agreement in this matter contained a warning that the resident was giving up his or her right to a jury trial by signing the agreement. In Fortune v. Castle Nursing Homes, Inc., the Fifth District noted the absence of this type of language in the arbitration clause in that case.[33] This warning weighs against a finding that the arbitration agreement is unconscionable. It clearly puts the resident on notice that she will be unable to seek a legal remedy against Personacare in a court of law.
 {¶ 39} Further, the arbitration agreement in the case at bar provided the resident 30 days to reject the agreement. This provision was not present in the arbitration clauses at issue in Small v. HCF ofPerrysburg, Inc. and Fortune v. Castle Nursing Homes, Inc.[34] The ability to reject the arbitration clause at a later time also weighs in favor of upholding the arbitration agreement. The resident was given an opportunity to think about his or her decision and, if unhappy with the agreement, the opportunity to reject the agreement. This 30-day period also provided the resident with an opportunity to discuss the matter with a family member or an attorney.
 {¶ 40} Finally, we address the issue of the payment of costs and attorney fees. The Fifth and Sixth Appellate Districts were strongly critical of the language in the arbitration clauses that the prevailing party was entitled to attorney fees.[35] The courts observed that the inclusion of language requiring the losing party to pay the costs of the arbitration and/or the other party's attorney fees had a deterrent effect on a resident advancing a claim against the nursing home.[36]
The arbitration agreement in this matter provided that each party would be responsible for their own attorney fees. Further, the agreement provided that Personacare would be responsible for the entire cost of the mediation process and the costs of arbitration for the first five days. If the arbitration lasted longer than five days, the arbitration costs would be split between the parties. These provisions did not have a deterrent effect on a resident's decision to bring a claim against Personacare.
 {¶ 41} We do not find the arbitration agreement to be substantively unconscionable. As noted above, there are stark differences between the arbitration agreement in this matter and the arbitration clauses found to be substantively unconscionable by the Fifth and Sixth Appellate Districts.[37] The terms of the agreement are commercially reasonable and, unlike those provisions in Small v. HCF of Perrysburg, Inc. andFortune v. Castle Nursing Homes, Inc., are not inherently unfair to the resident.
 {¶ 42} We have determined that the arbitration agreement is procedurally unconscionable, but not substantively unconscionable. For a contract to be unenforceable due to unconscionability, it must be both procedurally unconscionable and substantively unconscionable.[38]
Since the contract is not substantively unconscionable, we will not disturb the trial court's decision that it should be enforced.
 {¶ 43} Next, appellant argues that there was no consideration, because Patricia Manley did not receive anything in exchange for giving up her right to a jury trial. We disagree.
 {¶ 44} As with any contract, a valid arbitration agreement requires consideration.[39]
 {¶ 45} "Consideration may consist of either a detriment to the promisee or a benefit to the promisor.'[40] A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee.'[41]"[42]
 {¶ 46} Patricia Manley received the opportunity to have future legal disputes resolved through arbitration, a less-costly alternative to a jury trial. Also, the arbitration process would be less time-consuming than a traditional court proceeding. These were potential benefits to Patricia Manley. Finally, both sides were bound by the arbitration agreement. Thus, if Personacare sought legal recourse from Patricia Manley, it too would be bound by the arbitration agreement. This is a potential detriment to Personacare.
 {¶ 47} There was sufficient consideration in the arbitration agreement.
 {¶ 48} Appellant also argues that the arbitration agreement violated federal law. Specifically, she argues that Personacare received additional consideration, i.e. Patricia Manley giving up her right to a jury trial, in violation of the following provision of the Code of Federal Regulations:
 {¶ 49} "In the case of a person eligible for Medicaid, a nursing facility must not charge, solicit, accept, or receive, in addition to any amount otherwise required to be paid under the State plan, any gift, money, donation, or other consideration as a precondition of admission, expedited admission or continued stay in the facility."[43]
 {¶ 50} We have previously determined that the arbitration agreement was not a precondition of admission. Therefore, any consideration given or received by Personacare in relation to the arbitration agreement was separate from the admission contract. Further, the Ninth District has specifically rejected an identical argument.[44] The Ninth District noted that the First District Court of Appeals of Florida and Supreme Court of Alabama have both held that an arbitration agreement is not the type of "consideration" discussed in the Code of Federal Regulations.[45]
 {¶ 51} Manley's assignment of error is without merit.
 {¶ 52} The judgment of the trial court is affirmed.
DIANE V. GRENDELL, J., concurs in judgment only,
[1] R.C. 2711.02(C).
[2] Harsco Corp. v. Crane Carrier Co. (1997), 122 Ohio App.3d 406,410.
[3] (Citations omitted.) Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
[4] Jeffrey Mining Prod., L.P. v. Left Fork Mining Co. (2001),143 Ohio App.3d 708, 718, citing Ins. Co. of N. Am. v. Automatic SprinklerCorp. (1981), 67 Ohio St.2d 91.
[5] Fortune v. Castle Nursing Homes, Inc., 164 Ohio App.3d 689,2005-Ohio-6195, at ¶ 7-10.
[6] Small v. HCF of Perrysburg, Inc., 159 Ohio App.3d 66,2004-Ohio-5757, at ¶ 10-11, citing R.C. 2711.01(A). See, also,Broughsville v. OHECC, LLC, 9th Dist. No. 05CA008672, 2005-Ohio-6733, at 1f17, citing Schaeferv. Allstate Ins. Co. (1992), 63 Ohio St.3d 708,711-712, Porpora v. Gatliff Bldg. Co., 160 Ohio App.3d 843,2005-Ohio-2410, at ¶ 6, and Eagle v. Fred Martin Motor Co.,157 Ohio App.3d 150, 2004-Ohio-829, at H14.
[7] Small v. HCF of Perrysburg, Inc., 159 Ohio App.3d 66,2004-Ohio-5757, at ¶ 10, citing Williams v. Aetna Fin. Co. (1998),83 Ohio St.3d 464, 471.
[8] (Citations omitted.) Broughsville v. OHECC, LLC, 2005-Ohio-6733, at ¶ 17.
[9] Orlettv. Suburban Propane (1989), 54 Ohio App.3d 127, 129.
[10] Collins v. Click Camera Video, Inc. (1993), 86 Ohio App.3d 826,834.
[11] Cross v. Carnes (1998), 132 Ohio App.3d 157, 169-170.
[12] Small v. HCF of Perrysburg, Inc., 159 Ohio App.3d 66,2004-Ohio-5757, at ¶ 29. See, also, Broughsville v. OHECC, LLC,2005-Ohio-6733, at1J17.
[13] Jeffrey Mining Prod., L.P. v. Left Fork Mining Co.,143 Ohio App.3d at 718, citing Dorsey v. Contemporary Obstetrics Gynecology,Inc. (1996), 113 Ohio App.3d 75, 80.
[14] Cross v. Carnes, 132 Ohio App.3d at 170, citing Collins v. ClickCamera Video, Inc., 86 Ohio App.3d at 834.
[15] Small v. HCF of Perrysburg, Inc., 159 Ohio App.3d 66,2004-Ohio-5757, at ¶ 28.
[16] Broughsville v. OHECC, LLC, 2005-Ohio-6733, ¶ 25.
[17] Small v. HCF of Perrysburg, Inc., 159 Ohio App.3d 66,2004-Ohio-5757, at ¶ 27.
[18] Broughsville v. OHECC, LLC, 2005-Ohio-6733, at ¶ 21.
[19] Id. at U23.
[20] Small v. HCF of Perrysburg, Inc., 159 Ohio App.3d 66,2004-Ohio-5757, at ¶ 28.
[21] Broughsville v. OHECC, LLC, 2005-Ohio-6733, at ¶ 21.
[22] Small v. HCF of Perrysburg, Inc., 159 Ohio App.3d 66,2004-Ohio-5757, at ¶ 28.
[23] Broughsville v. OHECC, LLC, 2005-Ohio-6733, at ¶ 21.
[24] See Small v. HCF of Perrysburg, Inc., at ¶ 28; Broughsville v.OHECC, LLC, ¶ 23.
[25] Small v. HCF of Perrysburg, Inc., 159 Ohio App.3d 66,2004-Ohio-5757, at ¶ 29.
[26] Small v. HCF of Perrysburg, Inc., 159 Ohio App.3d 66,2004-Ohio-5757; Fortune v. Castle Nursing Homes, Inc.,2005-Ohio-6195.
[27] Small v. HCF of Perrysburg, Inc., 159 Ohio App.3d 66,2004-Ohio-5757, at ¶ 26.
[28] Fortune v. Castle Nursing Homes, Inc., 2005-Ohio-6195, at ¶34.
[29] Fortune v. Castle Nursing Homes, Inc., 2005-Ohio-6195, at ¶ 33, citing Buraczynski v. Eyring (Tenn. 1996), 919 S.W.2d 314.
[30] Small v. HCF of Perrysburg, Inc., at If 13-17; Fortune v. CastleNursing Homes, Inc., at ¶ 31.
[31] See Small v. HCF of Perrysburg, Inc., at ¶ 25.
[32] Id.
[33] Fortune v. Castle Nursing Homes, Inc., at ¶ 31.
[34] Small v. HCF of Perrysburg, Inc., at ¶ 25. Fortune v. CastleNursing Homes, Inc., at ¶ 33-34.
[35] Small v. HCF of Perrysburg, Inc., at ¶ 26. Fortune v. CastleNursing Homes, Inc., at ¶ 29-30.
[36] Id.
[37] See Small v. HCF of Perrysburg, Inc. and Fortune v. CastleNursing Homes, Inc., supra.
[38] Small v. HCF of Perrysburg, Inc., 159 Ohio App.3d 66,2004-Ohio-5757, at ¶ 23. See, also, Broughsville v. OHECC, LLC,2005-Ohio-6733, at ¶ 17.
[39] Dantz v. Apple Am. Group, LLC (N.D.Ohio 2003), 277 F.Supp.2d 794,801.
[40] Irwin v. Lombard Univ. (1897), 56 Ohio St. 9, 19.
[41] (Secondary citations omitted.) Id. at 20.
[42] Lake Land Emp. Group of Akron, LLC v. Columber,101 Ohio St.3d 242, 2004-Ohio-786, at ¶ 16.
[43] Section 483.12(d)(3), Title 42, C.F.R.
[44] Broughsville v. OHECC, LLC, 2005-Ohio-6733, at ¶ 35-36.
[45] Id. at 35, quoting Gainesville Health Care Center, Inc. v.Weston (Fla.App.2003), 857 So.2d 278, 288, and Owens v. Coosa ValleyHealth Care, Inc. (Ala. 2004), 890 So.2d 983, 989.