FORTUNE, Appellee,

v.

CASTLE NURSING HOMES, INC., Appellant.

[Cite as *Fortune v. Castle Nursing Homes, Inc.*, 164 Ohio App.3d 689, 2005-Ohio-6195.]

Court of Appeals of Ohio,
Fifth District, Holmes County.

No. 05 CA 1.

Decided Nov. 22, 2005.

Dickson, Campbell & Freeman and Blake A. Dickson, for appellee.

Critchfield, Critchfield & Johnston and Steven J. Shrock, for appellant.

WISE, Judge.

{¶ 1} Appellant, Castle Nursing Homes, Inc. ("Castle"), appeals the decision of the Holmes County Court of Common Pleas that denied its motion to stay proceedings pending arbitration. The following facts give rise to this appeal.

{¶ 2} Appellee, Ida May Fortune, is a former resident of Castle. On July 6, 2004, appellee filed a lawsuit against Castle alleging nursing-home negligence after an aide, while assisting Fortune in the shower room, allowed her to fall to the floor, causing injury to her right leg. On October 1, 2004, Castle filed an amended answer alleging, among other things, that the dispute was subject to mandatory arbitration pursuant to Article VI of the admission agreement dated April 23, 2003. Castle also filed a motion to stay proceedings pending arbitration.

{¶ 3} The trial court conducted a hearing on Castle's motion on November 24, 2004. The only evidence introduced at the hearing was the admission agreement. The parties stipulated that the agreement was authentic and signed by appellee at the time of her admission. At the conclusion of the hearing, the trial court

took the matter under advisement. On December 3, 2004, the trial court issued a judgment entry denying Castle's motion.

{¶ 4} Castle timely filed a notice of appeal and sets forth the following assignment of error for our consideration:

{¶ 5} "I. The trial court abused its discretion in finding a contractual arbitration clause was both procedurally and substantively unconscionable and hence refusing to enforce it."

{¶ 6} In its sole assignment of error, Castle maintains that the trial court abused its discretion when it refused to enforce the arbitration clause in the admission agreement on the grounds that it is both procedurally and substantively unconscionable. We agree.

{¶ 7} In reviewing Castle's assignment of error, we begin by addressing the applicable standard of review. Normally, the determination of whether a dispute is subject to a contractual arbitration clause rests within the sound discretion of the trial court. *Small v. HCF of Perrysburg, Inc.*, 159 Ohio App.3d 66, 2004-Ohio-5757, 823 N.E.2d 19. "Abuse of discretion" connotes more than an error of law or judgment. Instead, it implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. However, this court has observed that the issue of whether a contract is unconscionable is a question of law that requires a factual inquiry into the particular circumstances of the transaction. *Bolton v. Crockett Homes, Inc.*, Stark App. No. 2004CA00051, 2004-Ohio-7318, 2004 WL 3251302.

{¶ 8} In reaching this conclusion, we cited a case decided by the Ninth District Court of Appeals, wherein the court explained:

{¶ 9} "Since the determination of whether a contract is unconscionable is a question of law for the court, a factual inquiry into the particular circumstances of the transaction in question is required. Such a determination requires a case-by-case review of the facts and circumstances surrounding the agreement. As this case involves only legal questions, we apply the de novo standard of review." (Citations omitted.) Id. at ¶ 8, citing *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 13.

{¶ 10} Therefore, based upon our decision in *Bolton,* we conclude that the applicable standard of review is de novo. We next turn to a review of the language in the admission agreement.

{¶ 11} The provisions of the admission agreement at issue provide as follows:

{¶ 12} "**VI. RESOLUTION OF DISPUTES**

"  *  *  *

{¶ 13} "**B. Resident's Rights.** Any controversy, dispute, disagreement or claim of any kind arising between the parties after the execution of this Agreement in which the Resident or a person on his/her behalf alleges a violation of any right granted the Resident in a State or Federal statute shall be settled exclusively by binding arbitration."

"  *  *  *

{¶ 14} "**D. Conduct of Arbitration.** Any arbitration conducted pursuant to this Article VI shall be conducted at the Facility in accordance with the American Health Lawyers Association ('AHLA') Alternative Dispute Resolution Service Rules of Procedure for Arbitration, and judgment on the award rendered by the arbitrator shall be entered in any court having jurisdiction thereof. The parties understand that arbitration proceedings are not free and that any person requesting arbitration will be required to pay a filing fee and other expenses. The prevailing party in the arbitration shall be entitled to have the other party pay its costs for the arbitration, including reasonable attorney's fees and prejudgment interest. The issue of whether a party's claims are subject to arbitration under this Agreement shall be decided through the AHLA arbitration process noted above."

{¶ 15} In its judgment entry denying Castle's motion to stay proceedings pending arbitration, the trial court concluded that the arbitration clauses are both substantively and procedurally unconscionable. The trial court found that "there is much cause for concern when a nursing home patient agrees to waive her right to trial by jury and agrees to pay the nursing home's attorney fees for the resolution of any dispute, including a negligence action as contained herein." In reaching this conclusion, the trial court relied upon the recent decision rendered by the Sixth District Court of Appeals in *Small*, 159 Ohio App.3d 66, 2004-Ohio-5757, 823 N.E.2d 19.

{¶ 16} We find *Small* relevant to our analysis in the case sub judice. In *Small*, the executor of Small's estate filed a complaint for negligence against a nursing home in which Small was residing when he was injured in a fall from a wheelchair. Id. at ¶ 7. The executor alleged that the nursing home's negligence caused Small's fall and that Small's injuries proximately caused his death. Id. The nursing home filed a motion with the trial court requesting a stay in the matter and a referral to arbitration pursuant to state law and the admission agreement. Id. at ¶ 8. The trial court granted the nursing home's motion and ordered the matter to arbitration. Id.

{¶ 17} On appeal to the Sixth District Court of Appeals, the court reversed the decision of the trial court, finding the arbitration clause unconscionable. Id. at

¶ 29. The court of appeals set forth the following analysis in making this determination. First, the court noted that arbitration is encouraged as a method of dispute resolution, and a presumption favoring arbitration arises when the claim in dispute falls within the arbitration provision. Id. at ¶ 10, citing *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859. R.C. 2711.01(A) sets forth Ohio's public policy favoring arbitration and provides:

{¶ 18} "A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."

{¶ 19} Second, the court reviewed the language at issue in the contract and stated that an arbitration clause may be legally unenforceable when the clause is not applicable to the matter at hand, when the parties did not agree to the clause in question, or when the arbitration clause is found to be unconscionable. The court explained:

{¶ 20} "Unconscionability refers to the absence of a meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to one party. *Collins v. Click Camera & Video, Inc.* (1993) 86 Ohio App.3d 826, 834, 621 N.E.2d 1294. Accordingly, unconscionability consists of two separate concepts: (1) substantive unconscionability, which refers to the commercial reasonableness of the contract terms themselves, and (2) procedural unconscionability, which refers to the bargaining positions of the parties.

{¶ 21} " 'Substantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable. Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability. However, courts examining whether a particular limitations clause is substantively unconscionable have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability. See [*Fotomat Corp. of Florida v.*] *Chanda* [ (Fla.App.1985) 464 So.2d 626]; [*Richard A.*] *Berjian* [*D.O., Inc. v. Ohio Bell Tel. Co.* (1978), 54 Ohio St.2d 147, 8 O.O.3d 149, 375 N.E.2d 410].

{¶ 22} " 'Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, e.g., "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question." *Johnson v. Mobil Oil Corp.* (E.D.Mich.1976), 415 F.Supp. 264, 268.' Id.

{¶ 23} "In order to negate an arbitration clause, a party must establish a quantum of both substantive and procedural unconscionability." (Citations omitted.) Id. at ¶ 20–23.

{¶ 24} Third, the court in *Small* proceeded to address the "substantive unconscionability" and "procedural unconscionability" prongs. In concluding that the arbitration clause was substantively unconscionable, the court found that the resident or representative is, by signing the admissions agreement, for all practical purposes being required to agree to the arbitration clause. Id. at ¶ 25. The court made this finding even though the arbitration clause contained a statement that admission is not conditioned upon agreement to the clause. Id. However, this same clause also stated that any controversy, dispute, disagreement, or claim of a resident shall be settled exclusively by binding arbitration. Id. Further, in bold print directly above the signature lines, it indicated that by signing the agreement, the parties agreed to arbitrate their disputes and that the parties agreed to the terms of the agreement. Id. There existed no means by which a resident or representative could reject the arbitration clause.

{¶ 25} *Small* also held the arbitration clause substantively unconscionable because the clause provided that the prevailing party was entitled to attorney's fees. Id. at ¶ 26. The court was concerned that individuals may be discouraged from pursuing claims because, in addition to paying their attorney and the costs of the arbitration, they may also be required to pay the facility's costs and attorney's fees. Id.

{¶ 26} *Small* next addressed its findings as to the issue of procedural unconscionability. The court found the arbitration clause procedurally unconscionable because Small's spouse signed the agreement under a great deal of stress, the agreement was not explained to her, she did not have an attorney present, she did not have any particularized legal expertise, and she was 69 years old on the date the agreement was signed. Id. at ¶ 28. The court reached this conclusion upon review of an affidavit submitted by Mrs. Small. Id. at ¶ 27.

{¶ 27} In response to appellee's argument and the above-cited case, Castle maintains, as to the substantive-unconscionability prong, that no matter how unfair the contracting process or how unequal the parties' bargaining power, if the terms of the contract ultimately agreed to are not grossly unfair, the contract

is not unconscionable. Castle contends that our analysis should be whether the contract's terms are unreasonably favorable to one party. Castle argues that the language of the arbitration clause cannot be deemed unreasonably unfavorable because the "loser pays" provision does not place an unfair burden on appellee unless she pursues a meritless claim. Castle claims that the provision affects each party equally and is therefore even-handed.

{¶ 28} Castle further argues that the "loser pays" provision does not have a stifling effect on residents' filing claims, which is evidenced by the fact that it did not prevent appellee from filing a claim. Finally, Castle also maintains that the admission agreement contains a severability clause,[1] and rather than striking the entire arbitration clause as substantively unconscionable, the court should have struck only the "loser pays" provision.

{¶ 29} A review of the trial court's judgment entry indicates that the court did not merely rely upon the "loser pays" provision in support of its finding that the arbitration clause is substantively unconscionable. The trial court also relied upon the fact that a patient is required to waive his or her right to a jury trial. As did the Sixth District Court of Appeals in *Small*, we also find the "loser pays" provision troubling because generally, attorney fees are not awarded to the prevailing party in a civil action unless ordered by the court.

{¶ 30} Further, although the injured resident may ultimately be the prevailing party, a resident's fear that he or she will be saddled with the facility's costs and attorney fees clearly would discourage the filing of a claim except in the most obvious cases of negligence. Unfortunately, most cases of negligence are not that clear-cut. Thus, we find that this provision does have a stifling effect on the filing of claims. This concern does not leave Castle unprotected from frivolous lawsuits because if a resident pursues a frivolous claim, Castle would be entitled to attorney fees and costs under Civ.R. 11 and R.C. 2323.51. Therefore, the "loser pays" provision is not necessary to protect Castle from frivolous lawsuits.

{¶ 31} We also express concern regarding the format of the document in which appellee agreed to waive her right to a jury trial. The admission agreement consists of a total of seven pages. The arbitration clause at issue is found on page five of this agreement. The arbitration clause is written in the same size font as the rest of the agreement. Also, in *Small*, there is no warning in capital letters above the signature lines, that by signing the agreement, a party is waiving his or her right to sue in a court of law and is agreeing to arbitrate

---

1. Section D of Article VI provides: "If any portion of this Agreement is determined to be illegal or not in conformity with applicable laws and regulations, such part shall be deemed to be modified so as to be in accordance with such laws and regulations, and the validity of the balance of this Agreement shall not be affected."

disputes. See *Small,* 159 Ohio App.3d 66, 2004-Ohio-5757, 823 N.E.2d 19, at ¶ 19. Further, as to the actual language used in Article VI, none of the sections state that a resident is giving up his or her right to a jury trial by signing the admission agreement. Instead, Section B merely states that a resident or his or her representative is agreeing to settle a claim "exclusively by binding arbitration."

{¶ 32} By making the above observations, we are not finding that a binding-arbitration clause may never be included in an admission agreement. We are merely concluding that inclusion of a binding-arbitration clause must be done in such a manner that the person signing the agreement is made aware of the existence of the provision and the importance of the right that he or she is waiving.

{¶ 33} An example of an arbitration agreement in a medical setting that a court found not to be oppressive or unconscionable had the following features: (1) it was a stand-alone, one-page contract; (2) the contract contained an explanation of its purpose that encouraged the patient to ask questions; (3) the contract contained a ten-point capital-letter red type directly above the signature line that stated, "[B]y signing this contract you are giving up your right to a jury or court trial"; (4) the contract also provided that it could be revoked by the patient within 30 days. See *Buraczynski v. Eyring* (Tenn.1996), 919 S.W.2d 314.

{¶ 34} None of the features listed above are found in the admission agreement under consideration in the case sub judice. Accordingly, we agree with the trial court's conclusion that the arbitration clause is substantively unconscionable. We base our conclusion on the fact that it contains a "loser pays" provision, that a resident or representative of the resident is required to sign the admission agreement containing the arbitration provision for admission into the facility, and that the format of the document and the language used is such that a person executing the document is not placed on notice of the existence of the clause or the ramifications of agreeing to such a clause.

{¶ 35} We must next address the procedural-unconscionability prong. As noted earlier in the opinion, under this analysis, we must consider those factors bearing on the relative bargaining position of the contracting parties. There must be some evidence presented to establish an uneven bargaining position based upon the age, education, intelligence, business acumen and experience in similar transactions. We must also consider whether the terms were explained to the weaker party and the drafter of the contract.

{¶ 36} In the case sub judice, the trial court conducted a hearing on Castle's motion. At this hearing, the only evidence introduced was a copy of the admission agreement. Counsel for appellee presented no evidence concerning

the bargaining position of appellee at the time she executed the admission agreement. Without such evidence, we cannot make a finding of procedural unconscionability. In *Small*, the Sixth District based its finding of procedural unconscionability on an affidavit submitted by Mrs. Small, wherein she attested to the fact that she was under a great amount of stress, that the agreement was not explained to her, that she did not have an attorney present, that she did not have any particularized legal expertise, and that she was 69 years old on the date she signed the agreement. *Small*, 159 Ohio App.3d 66, 2004-Ohio-5757, 823 N.E.2d 19, at ¶ 28.

{¶ 37} Since appellee was not able to establish procedural unconscionability as required by a quantum of evidence under a de novo standard of review, we must reverse the trial court's finding of unconscionability. However, in reaching this conclusion, we cite the Sixth District's observations regarding the use of arbitration clauses. In *Small*, the trial court stated:

{¶ 38} "Arbitration clauses were first used in business contracts between sophisticated businesspersons as a means to save time and money should a dispute arise. As evidenced by the plethora of recent cases involving the applicability of arbitration clauses, the clauses are now being used in transactions between large corporations and ordinary consumers, a use that is cause for concern. Particularly problematic in this case, however, is the fact that the clause at issue had potential application in a negligence action. Such cases are typically fact-driven and benefit from the discovery process afforded in a civil action. Further, negligence cases often hinge on the reasonableness of a particular action or inaction. Such a subjective analysis is often best left to a jury acting as the fact finder. These observations are not intended to prevent the application of arbitration clauses in tort cases; we merely state that these additional facts should be considered in determining the parties' intentions." Id. at ¶ 29.

{¶ 39} Accordingly, Castle's sole assignment of error is sustained.

{¶ 40} For the foregoing reasons, the judgment of the Court of Common Pleas of Holmes County, Ohio, is hereby reversed and remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

GWIN, P.J., and FARMER, J., concur.