{¶ 43} The holding endorsed by the majority essentially allows a competent individual of majority status to disregard an arbitration provision by claiming he or she was ignorant both of what was signed as well as its legal impact. In light of this holding, a "reasonable consumer" may avoid the impact of his or her otherwise legally binding promise if he or she experiences some post hoc unhappiness with the bargain into which he or she voluntarily entered. I decline to support this position. As I would hold appellants failed to meet their burden of demonstrating that the arbitration clause was either substantively or procedurally unconscionable, I respectfully dissent from the opinion of the majority.
 {¶ 44} Substantive Unconscionability
 {¶ 45} The majority maintains that the arbitration clause under review is substantively unconscionable because most, presumably reasonable, consumers would be unable to comprehend and/or recognize that submitting to arbitration functions to *Page 15 
waive their right to have any dispute resolved by a court. In support of its conclusion, the majority analogizes the instant matter with the Fifth Appellate District's decision in Fortune v. Castle Nursing Homes,Inc., 164 Ohio App.3d 689, 2005-Ohio-6195, a case addressing the narrow issue of the validity of an arbitration clause in a medical setting.
 {¶ 46} In Fortune, the court determined an arbitration clause in a nursing home's admissions agreement was substantively unconscionable.[2] The court pointed out that the clause appeared on page 5 of the 7 page agreement. Although the clause was not in fine print, it was not otherwise distinguishable from the remainder of the agreement and was buried deep in the body of the contract. The court was further troubled by a "loser pays" clause in the provision. Specifically, the court commented:
 {¶ 47} "[Although the injured resident may ultimately be the prevailing party, the fear a resident may have that he or she will be saddled with the facility's costs and attorney's fees clearly would discourage the filing of a claim except in the most obvious cases of negligence. Unfortunately, most cases of negligence are not that clear-cut. Thus, we find such a provision does have a stifling effect on the filing of claims." Id. at ¶ 30.
 {¶ 48} Finally, the court found the provision problematic because it failed to explicitly warn a potential resident that he or she surrendered his or her right to a jury trial by signing the agreement. Id. ¶ 31. After considering the collective impact of the foregoing concerns, the court determined the clause was substantively unconscionable. *Page 16 
 {¶ 49} Here, the agreement at issue was a construction contract, not an admissions agreement for a nursing home. The agreement was merely one page long and thus the arbitration clause at issue was apparent from the face of the document. Moreover, immediately above the signature line, the agreement explicitly stated, in capital letters, that the buyer could cancel the transaction "* * * AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THE TRANSACTION * * *." This provision provided the Bayes with ample time to reconsider their agreement, consult an attorney, or further question Sobol on the implications of the contractual provisions to which they agreed, e.g., the nature of arbitration and the relevant applicable rules governing the arbitration process if it were to be invoked.
 {¶ 50} The only analogy between the agreement in the instant matter and the agreement in Fortune is the failure of both arbitration provisions to contain an express waiver of a contracting party's right to a jury trial. I believe this alone is insufficient to hold the agreement substantively unconscionable. Courts have held that the loss of the right to a jury trial is a "fairly obvious consequence of an agreement to arbitrate." Cooper v. MRM Investment. Co. (C.A. 6., 2004),367 F.3d 493, 506; see, also, Garcia v. Wayne Homes, LLC, 2d Dist. No. 2001 CA 53, 2002-Ohio-1884, (holding a party who agrees to arbitration is bound even when the clause does not reference or contain an express waiver of the right to a jury trial. Id. at ¶ 2); Snydor v. Conseco Fin.Services. Corp. (C.A. 4, 2001), 252 F.3d 302, 307 (holding although no express waiver appeared in arbitration agreement, loss of right to trial by jury was patent); c.f., ABM Farms, Inc. v. Woods, 81 Ohio St.3d 498,503, 1998 Ohio 612 (holding there is no requirement that an arbitration clause be explained orally to a party prior to signing where the provision at *Page 17 
issue was not in fine print, was not hidden or out of the ordinary, and was not misrepresented to the signatory). In light of the foregoing, I would hold the Bayes failed to put forth sufficient evidence that the terms of the contract were unfair or otherwise commercially unreasonable.
 {¶ 51} The majority additionally utilizes the Eighth Appellate District's holdings in Felix v. Ganley Chevrolet, Inc., 8th Dist. Nos. 86990 and 86991, 2006-Ohio-4500, and Olah v. Ganley Chevrolet,Inc., 8th Dist. No. 86132, 2006-Ohio-694, in support of its conclusion. However, unlike the provisions in Felix and Olah, the terms of the arbitration provision in this case are simple and straightforward. Although the provision at issue does not address the procedural niceties of the arbitration process, its generality does not render the provision misleading or ambiguous. In Felix and Olah, it was the sellers' attempt, and ultimate failure, to fairly define the arbitration process which rendered it incomplete and therefore misleading and confusing. Here, although the contract does not specifically discuss the nature and impact of arbitration, it states the specific means arbitration will be accomplished, viz., via the American Arbitration Association in accord with its Commercial Arbitration Rules. I believe this reference and the built-in no fault, "three business day" revocation provision together provide a buyer with adequate notice of what to expect in the event of a dispute as well as a fair opportunity to investigate the process if the buyer deems such investigation necessary.
 {¶ 52} I also point out that the Bayes' (as well as the majority's) reliance on Porpora v. Gatliff Bldg. Co., 160 Ohio App.3d 843,2005-Ohio-2410 is misplaced. Here, the arbitration provision was neutral in that it was not skewed in one parties' favor. Although Patricia Bayes testified she believed Sobol would not make changes to the *Page 18 
contract, neither she nor her husband offered evidence to substantiate their beliefs. However, Sobol testified that he would be open to changing the contract, which he had done on many past occasions, if the Bayes expressed problems with the contract. None of the problems identified by the Ninth District in Porpora are evidenced in the case sub judice.
 {¶ 53} Given the strong policy favoring arbitration as well as the common judicial recognition that an arbitration clause need not include an express waiver of one's right to a jury trial, I would hold the provision at issue is not substantively unconscionable.
 {¶ 54} Procedural Unconscionability
 {¶ 55} I would additionally hold the contract is not procedurally unconscionable. Even though Sobol owned the construction business which created the contract, the business was small consisting of himself, his wife, and a secretary. Sobol, at the time of the agreement, was 71 years old and testified he reviewed the contract with appellants and answered any questions they had regarding the terms. Sobol testified appellants studied the contract for "probably a half hour" and signed it. When questioned whether he would have permitted changes to the preprinted portions of the contract, he avered "Oh, I would have — a lot of times, I X things out in contracts."
 {¶ 56} Alternatively, Tommy Bayes testified, via affidavit, that he has only a tenth grade education. While he testified he did not read the contract he did not indicate he was illiterate. Patricia Bayes testified she is a 47 year old house wife with a high school education. She also asserted she had previously worked in a family owned business. While she asserted she "felt hurried" to sign the contract and was led to believe Sobol *Page 19 
"would not make any alterations to the pre-printed terms and conditions of the contract," she offered no specific testimony in support of her feelings or beliefs on these issues.
 {¶ 57} With the foregoing in mind, I would hold the underlying contract was neither adhesive nor procedurally unconscionable in nature. Sobol is a 71 year old owner of a small construction business. Patricia Bayes and Tommy Bayes are both adults of majority. Mrs. Bayes, who read the contract, testified she had previously worked in a family business, indicating she was not unfamiliar with business transactions in general. Moreover, there is nothing in the record to suggest Mrs. Bayes was incapable of understanding the agreement. While Mr. Bayes testified his education was limited, he also testified he failed to read the agreement, evidently of his own volition.[3] Furthermore, the discussions pertaining to the contract occurred at the Bayes' residence where they had an opportunity to review the provisions of the one-page document.
 {¶ 58} Although Patricia Bayes testified she felt hurried to sign the agreement, there is no evidence in the record that Sobol pressured the Bayes or engaged in any otherwise overreaching tactics to secure the agreement. To the contrary, Sobol testified that the Bayes did not "just sign it. They both studied it for probably a half hour." He further averred that he read the contract over with the Bayes and, he remembered "Mr. and Mrs. Bayes, especially Mrs. Bayes, being a very, very careful person. She's a very intelligent woman. And, believe me, there were plenty of questions we discussed." *Page 20 
Moreover, the contract itself provided the Bayes with an escape hatch, which would allow the buyers to cancel the contract within three business days of entering the agreement. The record is devoid of any evidence that the Bayes sought clarification of the contract during this period and nothing in the record indicates their omission was a result of any act attributable to Sobol.
 {¶ 59} Finally, I recognize some Ohio courts have found certain preprinted agreements offered on a "take it or leave it" basis unconscionable where they involve contracts for so-called "necessities," i.e., a car or a home. See, Felix, supra, Olah, supra, andPorpora, supra. As just discussed, although the contract at issue was largely pre-printed, the evidence does not indicate Sobol was unwilling to change the contractual provisions if the Bayes raised specific concerns. Moreover, while the agreement was entered for purposes of home remodeling, there is nothing in the record indicating appellants were unable to remain in the house while construction was underway. The Ninth District has underscored what it has deemed a "substantial difference" between contracts of necessity and contracts where immediate contractual arrangements are not essential. See Porpora; see, also, Ball v. OhioState Home Services, Inc., 168 Ohio App.3d 622, 2006-Ohio-4464;English v. Cornwell Quality Tools Co., Inc., 9th Dist. No. 22578,2005-Ohio-6983.
 {¶ 60} Here, both parties agree that Mr. Sobol was invited to appellants' house to discuss a remodeling project on March 24, 2006 and, on the same date, the parties entered into the contract. Although appellants suggest they were not given an adequate opportunity to review the document, there is no credible evidence of insidious or compulsory tactics on Sobol's behalf. As the underlying contract was not one of *Page 21 
necessity and was not offered on a "take it or leave it basis," I fail to see the need for haste in signing the contract.
 {¶ 61} In sum, the parties were on essentially equal footing in terms of their relative bargaining power and the record fails to disclose any undue pressures placed upon the Bayes by Sobol. Further, the short, one page contract was read by a literate signatory who had the capacity to understand and/or question its provisions, seek changes, or even cancel the same within three days of entering the agreement. The fact the Bayes failed to pursue any of these options does not render the agreement unfair. I would therefore hold the contract was not procedurally unconscionable.
 {¶ 62} I believe the arbitration clause is neither substantively nor procedurally unconscionable and would therefore affirm the decision of the trial court.
[2] The court in Fortune determined the appellee resident failed to put forth sufficient evidence of procedural unconscionability and therefore sustained the appellant nursing home's sole assignment of error.
[3] The Supreme Court has recently underscored the legal and common-sensical axiom that "it will not do for a man to enter into a contract, and when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained." ABM Farms, Inc. v. Woods, 81 Ohio St.3d 498, 503,1998-Ohio-612, citing Upton v. Tribilcock (1998), 91 U.S. 45, 50. The court aptly observed that tolerating this type of ignorance or apathy could easily render any contract inconsequential or not worth the paper on which it was written. Id. *Page 1